BRADT *against* WALTON and  ANHORNE.

A. having pur-chased a lot of land of B. the title to which was doubtful, re-leased and re-conveyed to B. all his right and title to the lot; and at the re-quest of B. con-sented that B. might use the name of A. in an action of ejectment to re-cover the land, but A. was not to be at any fur-ther expense, or have any thing to do with the suits or lots in question, except as to the using his name, if ne-cessary.

B. employed C. an attorney, to bring actions of ejectment, and told C. that A. had consented to let his name be used, and C. accordingly used the name of A. as one of the les-sors. The plain-tiff in the suits was nonsuited, in consequence of which A. as one of the lessors, was obliged to pay the costs. A. brought an ac-tion on the case against C. the attorney, for using his name without his consent, so as to sub-ject him to the payment of costs, &c.; it was held that the authority given by A. to B. be-ing conditional and limited, C. followed the directions of B. at his peril, and had no right to use the name of A. so as to subject him to any costs or expenses; and that A. was entitled to recover of C.t he amount of the costs which he had been compelled to pay.

THIS was an action on the case, brought against the defendants, attorneys of this court, for using the name of the plaintiff, without his consent, as one of the lessors, in four actions of ejectment, for a lot of land in *Marcellus*, in which the plaintiff had no interest, and in which ac-tions, and the proceedings therein, the plaintiff was, with-out his authority, made liable for the payment of a large sum of money for costs, &c.

The cause was tried at the *Otsego* circuit, in *June*, 1811, before Mr. Justice *Van Ness*.

It was admitted by the counsel for the defendants, that the ejectment suits were brought, in which the name of the plaintiff was used as one of the lessors, and that they were the attorneys for the plaintiff, and that judg-ments of nonsuit had been obtained in the causes, in consequence of which the present plaintiff had been obli-ged to pay about 600 dollars, for costs of suit, and of the attachments issued against him, for the non-payment of the costs.(*a*)

The plaintiff proved, that he and *Eli Parsons*, another of the lessors, had, before the commencement of the suits in ejectment, to wit, on the 5th *February*, 1807, quit-claimed and conveyed to *John Lepper*, the other lessor, all their interest in the land in question ; and *J. Williams*,

(*a*) *See* 6 *Johns. Rep.* 318.   7 *Johns. Rep.* 539.

a witness, testified that in a conversation between *Bradt*, *Lepper* and *Parsons*, relative to the lot, *Bradt* said that he would not be at any further cost or expense about the lot; and they finally agreed that *Bradt* and *Parsons* should release all their right to *Lepper*, so that he might take what steps he pleased to recover the land, and the conveyances were afterwards executed to *Lepper*.

*Lepper* and *Parsons*, being previously released by the plaintiff, were admitted as witnesses and testified, that *Bradt* and *Parsons* purchased the lot in question of *Lepper*, but it was agreed, that they were not to pay for it, unless they were successful in recovering it. After much trouble and expense in endeavouring to obtain the lot, before the *Onondaga* commissioners, *Lepper* requested *Parsons* to prosecute a suit at law for the lot, and they called on *Bradt* the 5th *February*, 1807, when *Williams*, the other witness, was present. *Bradt* refused to furnish any more money, or to be at any further trouble or expense about the land; and it was agreed, that *Parsons* and *Bradt* should release to *Lepper*, who might proceed to recover the land, in such manner as he chose; and the deed of release was accordingly executed. *Parsons* afterwards suggested, that in prosecuting a suit for the recovery of the land, it might be necessary to use the names of *Parsons* and *Bradt* as lessors, and they consented that *Lepper* might use their names, if his counsel should think it necessary; but *Bradt*, at the same time, refused to be at any further expense, or to have any concern with the suits, further than the use of his name. A few days afterwards, *Lepper* and *Parsons* went to the defendants, and requested them to bring suits to recover the lot in question; and after being informed by *Parsons*, that *Bradt* had consented that his name might be used, the defendants commenced the actions of ejectment, and made use of the name of *Bradt*, as one of the lessors. It appeared that *Parsons* agreed

with *Lepper* to carry on the suits, at his own expensé, in consideration, that in case of a recovery, he should have half of the lot.

It appeared also, that when *Parsons* and *Bradt* execu-ted the release to *Lepper*, he gave them a writing, engaging to pay them 50 dollars, in case he recovered the land; and which was intended to recompense them, in part, for the expenses they had incurred in attempting to obtain the lot before the commissioners. This agree-ment which was held by *Parsons*, was given up to *Lepper*, at the time of the agreement between them as to the suits and the division of the lot, in case it was reco-vered.

. The judge charged the jury, that if they believed the plaintiff had authorized the defendants to make use of his name in the suits of ejectment, they ought to find a verdict for the defendants, and he expressed his opinion that the plaintiff had given such authority; but if they believed that the defendants were not authorized by the plaintiff to use his name, then the jury ought to find for the plaintiff, for the amount of the costs he had been obliged to pay. The jury found a verdict for the defendants.

A motion was now made to set aside the verdict and for a new trial.

*N. Williams*, for the plaintiff. The consent or authority given by the plaintiff to *Lepper* and *Parsons*, to use his name, was *special* and *limited*, that is, to use his name in such manner as not to subject him to the payment of any costs. A special agent, acting under a written or verbal authority, must act within the scope of his authority; and if he exceeds it, his acts are void.*

* Co. Litt. 258.
a. note 1. Perk.
189.  5 Johns.
Rep. 58. 3 Term
Rep. 760. 1 Esp.
Rep. 111.  2
Johns. Rep. 48.
6 Johns. Rep.
52. 7 Johns. Rep.
390.

[KENT, Ch. J. The principles as to agents are too well settled to be disputed.]

If, then, the defendants have acted from the authori-
6

zation of an agent, who has exceeded his powers, they must be liable. The defendants might use the name of the plaintiff; but if they did so, they were bound to protect him against the payment of costs. If made liable to refund to the plaintiff for the costs he has been obliged to pay, they cannot complain. It was their duty to have looked to the authority of the agents, and if they have been guilty of fraud or deception, the defendants ought to suffer, rather than the plaintiff, who is innocent. It never was the intention of the parties, that the plaintiff should be liable for any further costs. The plaintiff never gave the defendants any authority whatever. The relation of client and attorney did not exist between them. The defendants had the deed of release before them, and must have known that the plaintiff had no interest in the suits.

*Gold*, contra. This is an action against the defendants, for using the name of the plaintiff without his consent; but it is proved, that he did consent that his name might be used, and that is sufficient to defeat the action.

There was, in fact, a power from the plaintiff to *Lepper* and *Parsons* to use his name; and a contract on their part to indemnify him against any cost or expense. If the plaintiff has been damnified, he must resort to the contract of indemnity. It does not appear but that *Lepper* and *Parsons* are competent to indemnify him; and if they are not, he should have taken security. It is enough for the defendants, that the plaintiff consented that his name might be used as lessor. The question of damages or costs, lies altogether between the plaintiff and his agents.

Suppose *Lepper* and *Parsons* had been the attorneys, could they have been made liable in this action? Must not the plaintiff have resorted to the contract of indemnity?

The defendants stand in the place of *Lepper* and *Par-*

*sons*, and cannot be made liable in this suit, if they are not responsible.

Again, the costs contemplated by the parties were the usual costs of prosecuting the suits in ejectment; not the unforeseen costs of a nonsuit, or a verdict for the defendant.

*Cady*, in reply, was stopped by the court.

VAN NESS, J. I am satisfied that I was wrong in the opinion which I gave to the jury. It was a voluntary and gratuitous license on the part of the plaintiff, who might annex to it what condition he thought proper. It is admitted, that the defendants stand in the place of *Lepper* and *Parsons*, and could have no other or greater power than they possessed. If so, then, they could not use the name of the plaintiff, but on the condition annexed to the consent given by him to *Lepper* and *Parsons*.

*Per Curiam.* The leave given by the plaintiff to use his name, as one of the lessors, was not only gratuitous, for he had no interest in the suit, but it was specific. It was granted upon the condition that he should not be " at any further expense, or have any thing to do with the suits or lots." This was evidently the understanding of the parties, at the time that the plaintiff consented that *Lepper* might use his name. The plaintiff never meant to be liable, in any event, to any costs or expense that might thereafter be created, in relation to the lot, or to any suit concerning it, and so *Lepper* and *Parsons* must have understood him. They were bound, in good faith, and under their circumscribed authority, to have disclosed to the defendants, when they employed them, the special terms upon which they were permitted to use the name of the plaintiff. They did not do it, and the plaintiff has been eventually subjected to great loss and

damage. The single question is, whether he has his re-
medy, not only against *Lepper* and *Parsons*, who abused,
by exceeding their power, but also against the defend-
ants, who so used his name, under the directions of
*Lepper* and *Parsons*. The defendants took the directions
of their employers, at their peril. They used the name
of the plaintiff, at the peril of being responsible to him, if
they, by that means, subjected him to cost and expense.
If *Lepper* and *Parsons* could not use his name, but under
the condition annexed, no person employed by them
could do it. The parties to this suit may be considered
as equally innocent of any intentional injury, but the
plaintiff has the legal right of action, as the defendants
have used his name contrary to his instructions, so as to
produce cost and expense to him. If his name could
not be used, without putting him to cost and trouble, he
meant that it should not be used at all, and so he told the
persons who employed the defendants. He had a right
to annex that condition to the license, even if it went to
defeat it altogether. If *Parsons* and *Lepper* are insol-
vent and unable to satisfy these costs, the defendants
ought rather to pay them than the plaintiff, for the de-
fendants have trusted to the naked declarations of their
clients, but the plaintiff bound them by a special autho-
rity.

The verdict ought, therefore, to be set aside, and a new
trial awarded with costs, to abide the event of the suit.

New trial granted.